33811. McNEW *v.* DECATUR VETERINARY HOSPITAL INCORPORATED *et al.*

DECIDED DECEMBER 4, 1951.

*Herbert Johnson, Henry· M. Hatcher Jr., R. R. Rhudy,* for plaintiff.

*Howard, Tiller & Howard,* for defendant.

FELTON, J. The special ground of the amended motion for a new trial complains that the court erred in ·charging the jury that the degree of care owed by the defendants was that degree of care that would be exercised under the same or similar circumstances by a reasonable, careful man in the protection and care of his property. It is contended that this charge was error because the law holds a veterinary doctor to a higher degree of care than it requires of an ordinary person and that the court should have charged that the defendant was required to exercise that degree of care that an ordinary veterinary doctor would exercise under the same or similar circumstances. Assuming but not deciding that the charge was error, we do not feel that it was reversible error under the pleading and evidence of this case. The plaintiff bases his cause of action on the following alleged acts of negligence on the part of the defendants: "(a) In attempting to give the Pasteur treatment and save the life of the pup which had been bitten on the nose and mouth by a mad dog; (b) In not affording the pup proper treatment while in the hospital; (c) In releasing the pup on February 9, 1948; (d) In failing properly to diagnose the case and prescribe proper treatment when advised of the pup's weak bark and loss of appetite; (e) In failing to warn plaintiff of the dangerous condition of the pup after being advised of the pup's symptoms; (f) In allowing

plaintiff to be bitten by the dog." As to specifications (a) and (b), it is not shown that the defendants were negligent in the fact of giving the Pasteur treatment or that the treatment was improperly or unprofessionally administered, or that the dog was otherwise given improper treatment. The plaintiff testified that upon the first visit to the defendants with the dog that he "asked him [Dr. Andrews] if the Pasteur treatment would be successful and told him to give it to him. Of course I never had any dealings with giving Pasteur treatment and I asked him would it be safe or not in this case. He said he would give him the treatment." There was no attempt by the plaintiff to show that the Pasteur treatment should not have been given in this case or that it was inadvisable to do so. Dr. Andrews testified: "The treatment that I gave the dog, the Pasteur treatment, is the recognized treatment that I gave [give?] a puppy that is brought in under similar circumstances. It is recognized by the veterinary profession as the proper thing." There is no evidence at all to show that the treatment was improperly administered, and the fact that the puppy subsequently became rabid does not show it. The undisputed testimony of Dr. Andrews and Dr. Petty was that in cases where a dog is bitten about the nose and mouth by a rabid dog, the Pasteur treatment is only 50% sure. As to specification (c), the plaintiff does not prove that the defendants were negligent in releasing the pup from the hospital on February 9, 1948. The evidence shows that the dog was admitted on February 2. Dr. Andrews testified: "I know what treatment I gave him. That treatment was two shots a day for three days. The normal treatment . . is Pasteur treatment from five to twelve days with rabies vaccine. It depends where they are bitten, bitten around the face we give it twice a day." It was testified that the doctor on duty at the hospital on a particular day gives the treatment for that day. Dr. Petty testified that he gave the pup three treatments. Dr. Von Gremp testified that he gave the pup three treatments. The evidence did not show that the Pasteur treatment was not complete when the pup was released, or that the pup was released too early. Specification (d) refers to the time after the Pasteur treatment had been given and after the pup had been released from the hospital when the plaintiff contacted Dr. Andrews about

the pup's loss of appetite and his weak bark. It was not shown that Dr. Andrews or any other agent of the defendant saw the pup on this occasion. Dr. Andrews testified: "He called over the phone and said that the puppy wasn't eating too good and seemed to have a bad cold and he wanted to know what would be the best thing to do. I told him the best thing would be to bring the puppy in and let us check it. He said he couldn't very well because he was calling from town and that the puppy was in Pine Lake and he wanted to know if he could get some medicine and I told him that he could. I fixed sulfa and vitamin tablets for the puppy and left them in the window between the waiting room and office with his name on them. I did not see him when he came by there then." The plaintiff testified: "I took the dog back and to the hospital myself and talked to Dr. Andrews. I told Dr. Andrews that the dog had completely lost its appetite and was run down, and appeared to have a cold and had a hoarse bark. Dr. Andrews fixed up a package of vitamin capsules and sulfa pills and told me directions on administering them to him. . . I talked to Dr. Andrews. I don't remember Dr. Andrews telling me that he couldn't do anything unless he saw the dog, unless he gave you some vitamin pills. He said the dog possibly had a cold, he gave me some sulfa tablets and he gave me some vitamin pills to pep up his appetite. I did not call Dr. Andrews before I went out there. He did not tell me that the only thing he could prescribe was vitamins unless I brought the dog by the hospital for further examination." It does not appear that upon this occasion Dr. Andrews saw or examined the pup. Properly construed, the plaintiff's own testimony shows that he merely informed Dr. Andrews of the pup's symptoms. The plaintiff failed to prove the negligence alleged in specification (d) in that he failed to show by any standard that Dr. Andrews should have made a different diagnosis from the one made. As to specification (e), Dr. Andrews testified that when the pup was released from the hospital he advised the plaintiff that the pup should be confined for a period of 21 days from the date it was bitten. The plaintiff denied that he was ever so instructed. The jury necessarily found that the plaintiff was told to keep the dog confined in order to find for the defendant. Had the jury found that the plain-

tiff had not been so instructed, they would have had to find that the defendant was negligent as charged in specification (e). The plaintiff failed to prove any negligence under specification (f) in that he failed to prove how the defendant "allowed" the plaintiff to be bitten by the pup. Since a verdict was demanded for the defendants as to specifications (a), (b), (c), (d) and (f), and since the jury necessarily found for the defendants as to specification (e), the charge complained of was not harmful even if error. Furthermore, the plaintiff did not prove that the defendants in any of the situations arising in the case failed to exercise that degree of care exercised by an ordinary and prudent veterinary doctor under the same or similar circumstances.

The court did not err in overruling the amended motion for a new trial.

*Judgment affirmed. Sutton, C.J., and Worrill, J., concur.*